# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-3137

———————

United States of America,        *
                                       *

        Plaintiff - Appellee,     *

                                        *   Appeal from the United States
      v.                       *   District Court for the Western
                                        *   District of Arkansas.

Robert Louis Salter, Jr.,       *

                                       *

        Defendant - Appellant.   *

———————

Submitted:  June 20, 2005
Filed:  August 10, 2005

———————

Before MURPHY, BYE, and SMITH, Circuit Judges.

———————

BYE, Circuit Judge.

Robert Louis Salter, Jr. (Salter) appeals the district court's[1] 151-month sentence following his convictions for possessing a machine gun and failure to appear. We affirm.

———————

[1]The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas.

## I

On September 13, 2002, law enforcement responded to a reported shooting at Salter's residence involving Salter and his son, R.J. Salter. A five-hour standoff ensued between R.J. and police during which R.J. barricaded himself in his father's "gun room." Following the standoff, police searched Salter's residence and discovered several illegal weapons, including a H&K, Model 94, machine gun.

Salter was indicted on, among other charges, possessing a machine gun in violation of 18 U.S.C. §§ 922(o)(1) and 924(a)(2). On May 13, 2003, he entered a conditional plea of guilty to possessing the machine gun. On September 29, 2003, Salter failed to appear at his scheduled sentencing and a warrant was issued for his arrest. On January 7, 2004, he was indicted on one count of failure to appear in violation of 18 U.S.C. §§ 3146(a)(1) and 3146(b)(A)(ii). On February 1, 2004, Salter was apprehended and found in possession of an AR-15 rifle and .22-caliber handgun equipped with a silencer.

Salter was tried and convicted of failure to appear. The district court sentenced him to 120 months imprisonment for possession of the machine gun and thirty-one months imprisonment for failure to appear, with the sentences to run consecutively.[2]

---

[2]Salter's base offense level, after grouping the offenses under United States Sentencing Guidelines §§ 3D1.2(c) and 2J1.6, Application Note 3, was twenty. The district court added a four-level enhancement under § 2K2.1(b)(1)(B) because the offenses involved fourteen firearms, including a silencer, and two of the firearms were possessed after Salter was convicted of possessing a machine gun. Two additional levels were added under § 2K2.1(b)(3) for possessing a destructive device, namely a grenade launcher. Next, the district court added two levels under § 2K2.1(b)(4) for possessing firearms with obliterated serial numbers. Finally, the district court added two levels for role in the offense under § 3B1.1(c) and two levels for obstruction of justice under § 3C1.1. Salter's adjusted offense level was thirty-two with a sentencing range of 121 to 151 months.

The district court also imposed a three-year term of supervised release. At sentencing, the district court took note of <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), and held the sentencing guidelines were advisory.

On appeal, Salter argues his sentences were imposed in violation of <u>Blakely</u> and <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), because the district court imposed the various enhancements based upon judge-found facts. Salter further argues the sentences violated his right to due process because the enhancements were imposed in violation of the plea agreement. He contends the government breached the plea agreement because the district court was required to treat the guidelines as mandatory and impose a sentence without applying any enhancements based on judge-found facts. Finally, Salter argues the three-year term of supervised release violated the Sixth Amendment because it too was based on judge-found facts.

II

Salter first argues the district court's imposition of the various sentencing enhancements based on judge-found facts renders his sentence unconstitutional.

<u>Booker</u> held the United States Sentencing Guidelines scheme ran afoul of the Sixth Amendment insofar as it required judges, based on judge-found facts, to impose more severe sentences than could have been imposed based solely on facts found by the jury or admitted by the defendant. <u>Id.</u> at 750. To remedy the Sixth Amendment problem, the Supreme Court declared the entirety of the guidelines "effectively advisory," but instructed district courts to "consult those Guidelines and take them into account when sentencing." <u>Id.</u> at 757, 767. Following <u>Booker</u>, we continue to review the district court's application of the guidelines de novo and its findings of fact for clear error. <u>United States v. Mathijssen</u>, 406 F.3d 496, 498 (8th Cir. 2005).

Applying these standards, we find no error in the district court's sentence. Salter does not contend the district court's application of the specific enhancements or its findings of fact were erroneous. Rather, he insists Blakely and Booker prohibit district courts from applying sentencing enhancements based on judge-found facts. A correct reading of Booker demonstrates the futility of Salter's argument. Because the district court calculated the sentencing range properly and treated the guidelines as advisory, we conclude there was no Booker error. See United States v. Pirani, 406 F.3d 543, 551 (8th Cir. 2005) (en banc) (holding Booker error is avoided when the district court calculates the proper guidelines sentencing range, treats the guidelines as advisory, and imposes a reasonable sentence).

Salter next contends he was deprived of due process because the plea agreement, entered into after Blakely but before Booker, anticipated he would be sentenced in accordance with the sentencing guidelines as they existed at the time of the agreement. According to Salter, he agreed to be sentenced under a mandatory guidelines system which prohibited sentencing enhancements based on judge-found facts, and the government's acquiescence to the district court's use of an advisory system constitutes a breach of the plea agreement.

Plea agreements are contractual in nature and are interpreted according to general contract principles. United States v. Thompson, 403 F.3d 1037, 1039 (8th Cir. 2005). We review their interpretation and enforcement de novo. Id. Here, the plea agreement did not guarantee Salter would be sentenced under a mandatory guidelines system. Rather, it provided Salter would be sentenced in accordance with the sentencing guidelines. It is clear the district court properly calculated the guideline sentencing range and correctly anticipated the guidelines would be advisory instead of mandatory. Thus, Salter received the bargained for benefit. Moreover, "the development in the law announced by Booker subsequent to [Salter's] guilty plea does not invalidate his plea." United States v. Parsons, 408 F.3d 519, 521 (8th Cir. 2005) (citing Brady v. United States, 397 U.S. 742, 757 (1970)).

Finally, Salter contends the district court's imposition of a three-year term of supervised release was unconstitutional. Again, we disagree. Although the Supreme Court held the Sentencing Reform Act unconstitutional in <u>Booker</u>, 125 S. Ct. at 758, it did not discard the guidelines in their entirety. Rather, the Court excised only those provisions making application of the guidelines mandatory. <u>Id.</u> at 764. "Among the remaining provisions of the Sentencing Reform Act that the Court recognized as constitutionally valid was the supervised release statute, 18 U.S.C. § 3583." <u>United States v. Coleman</u>, 404 F.3d 1103, 1104 (8th Cir. 2005). Accordingly, it was not improper for the district court to impose a period of supervised release.

III

The judgment of the district court is affirmed.

_____